# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2019

Lyle W. Cayce
Clerk

No. 18-60559

COLEMAN HAMMONS CONSTRUCTION
COMPANY, INCORPORATED,

>    Petitioner

v.

OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION;
EUGENE SCALIA, SECRETARY, U.S. DEPARTMENT OF LABOR,

>    Respondents

On Petition for Review from a Decision and
Order of the United States of America
Occupational Safety and
Health Review Commission
OSHRC No. 17-0992

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This is an appeal from the Occupational Safety and Health Review Commission's decision that a construction company's 18 working-days-late response to a citation notice that had been misplaced in the company's internal mail system demonstrated "inexcusable neglect" and barred the company from contesting the citations for nearly $70,000. The Commission's decision

No. 18-60559

misapplied Fed. Rule Civ. Pro. 60(b), which applies under the Commission's own regulations. *See* 29 U.S.C. § 661(g) (Commission proceedings in accordance with the Federal Rules of Civil Procedure unless the Commission has adopted a different rule). Accordingly, we VACATE and REMAND for further proceedings.

## I. BACKGROUND

Coleman Hammons ("Coleman"), a Mississippi construction company, received four Occupational Health and Safety Administration ("OSHA") citations for alleged violations that occurred at one of the company's job sites in Madison, Mississippi. The penalties were assessed at $68,517. OSHA mailed the citations by certified mail to Coleman's office in Pearl, Mississippi, where they arrived on March 15, 2017. The citation notice included standard language requiring the employer to file a notice of contest within fifteen working days of receipt, here, April 5. *See* 29 U.S.C. § 659(a). Failure to do so, it warned, results in the citations' becoming "a final order not subject to review by any court or agency."

Coleman's standard operating procedures are undisputed. The company's office manager opens incoming mail and circulates it appropriately to staff within the office. When the company receives OSHA-related mail, the office manager directs the mail to the superintendent of the relevant project. Coleman had received OSHA citations in each of the past seven years. On at least three of those occasions, the system worked, and Coleman settled the citations in a timely manner through informal conferences with OSHA representatives. In this instance, however, Coleman's office manager had left her desk when the mail arrived on March 15. The company secretary/treasurer, who was not normally a mail handler, signed the return receipt, did not open the letter, and placed the OSHA letter on the Madison project superintendent's desk. Unfortunately, that superintendent was out of

town, continuing to work on the Madison project until April 24. As soon as the project superintendent returned to the office and discovered the OSHA citation notice, he telephonically informed OSHA on April 25 of the company's hope to resolve the problem that would otherwise cause it considerable hardship. The company followed up with a mailed notice of contest that was received by OSHA on May 1, only 18 working days after the prescribed deadline.

Coleman attempted to challenge the citation in a hearing before an administrative law judge ("ALJ"), but the government moved to dismiss the notice of contest as untimely. The company admitted untimeliness but argued that its error amounted to "excusable neglect" and deserved relief from the statutory bar pursuant to Federal Rule of Civil Procedure 60(b)(1), which applies to commission proceedings. *See* 29 U.S.C. § 661(g); Fed. R. Civ. P. 60(b)(1). The ALJ noted that Coleman was acting in good faith; the Secretary had not shown prejudice from the delay or an adverse effect on judicial administration; and the Secretary stipulated that the company "has a meritorious defense." Nonetheless, the ALJ concluded the company's failure was inexcusable because "the delayed filing was within the control of Coleman Hammons and could have been avoided if it had exercised reasonable diligence."

The Commission granted Coleman's request for discretionary review of the ALJ decision but, in a split decision, affirmed the ALJ. The Commission explained that the Rule 60(b) inquiry for excusable neglect is guided by the Supreme Court's decision in *Pioneer Invest. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 113 S. Ct. 1489 (1993), which emphasizes the equitable, multifactor nature of the provision. Nevertheless, the Commission enforced its rulings that a "key factor in evaluating whether a party's delay in filing was due to excusable neglect is 'the reason for the delay' including whether it was within the reasonable control of the movant." (quoting *Sec'y of*

No. 18-60559

*Labor v. A.W. Ross, Inc.*, 19 BNA OSHC 1147, 1148 (2000)).   Because the reason for Coleman's untimely response—its inadequate mail procedures—was within the control of Coleman, the Commission majority discounted that other factors favored granting the company an opportunity to defend against the citations.   The dissenting Commissioner would have granted relief.   He disagreed with the others' factual findings, construed the record to establish no more than a single unforeseeable human error, and criticized the majority's refusal to take into account all relevant factors, as stated in *Pioneer*.   Coleman seeks review in this court.

## II. STANDARD OF REVIEW

This court reviews the Commission's findings of fact under a substantial evidence standard.   29 U.S.C. § 660(a) (Commission's factual findings are upheld only if they are "supported by substantial evidence on the record considered as a whole").   The Commission's conclusions of law receive the ordinary deference afforded to agency decisions and are upheld unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A); *Austin Indus. Specialty Servs., L.P. v. OSHRC*, 765 F.3d 434, 438–39 (5th Cir. 2014).

## III. DISCUSSION

The issue in this case is whether the Commission's interpretation of Rule 60(b)(1) was in accordance with law and, if not, whether its decision refusing to find excusable neglect and reach the merits of Coleman's contest was supportable.[1]

Rule 60(b)(1) authorizes courts, or in this case, the Commission, to "relieve a party or its legal representatives from a final judgment, order, or

---

[1] We note that a circuit split exists regarding whether the Commission may use Rule 60(b) to grant relief following an untimely notice of contest.  *Compare Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 228-29 (2d Cir. 2002) *with J.I. Hass Co., Inc. v.*

proceeding" in instances involving "mistake, inadvertence, surprise, or excusable neglect." Whether a party is entitled to relief for excusable neglect is a determination that is "at bottom an equitable one, taking account of all relevant circumstances." *Pioneer*, 507 U.S. at 395, 113 S. Ct. at 1498. The relevant factors include but are not limited to "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Although *Pioneer* was a civil bankruptcy case, this court and others have applied it to "excusable neglect" inquiries under the Federal Rules of Civil Procedure. *See Halicki v. La. Casino Cruises, Inc.*, 151 F.3d 465, 469 (5th Cir. 1998).

The Commission in this instance placed virtually exclusive emphasis on the reason for Coleman's delay and accordingly barred relief even though "there is no evidence that [Coleman] acted in bad faith, that its untimely notice of contest had any impact on our proceedings, or that the delay in filing caused any prejudice to the [government]." That analysis was in error, though not out of step with previous Commission decisions.

The Commission has long considered the reason for the employer's delay in responding to a citation to be a "key factor" in its analysis. *See Sec'y of Labor v. A.W. Ross, Inc.*, 19 BNA OSHC 1147, 1148 (2000). The Commission has focused on the employer's "control" of the circumstances causing an untimely response to the exclusion of other equitable factors. But pursuant to *Pioneer,* "key factor" cannot mean "the only factor." Rule 60(b)(1) contains leeway for parties who make good-faith mistakes. *Pioneer* held that "neglect" by

*OSHRC*, 648 F.2d 190, 194 (3d Cir. 1981). Here, however, we assume arguendo that Rule 60(b) applies because the parties do not contest its applicability.

definition encompasses "omissions caused by carelessness." *Pioneer*, 507 U.S. at 388, 113 S. Ct. at 1495. The excusable neglect inquiry is not limited to whether a party's mistake caused the delay, such cause being expressed in the term "neglect," but equally concerns whether the party's mistake or omission was "excusable." Focusing narrowly on whether a party is at fault for the delay and denying relief if it bears any blame clearly conflicts with *Pioneer*'s more lenient and comprehensive standard. *See Halicki,* 151 F.3d at 468 (reconfirming that the decision in *Pioneer* "abrogated our previous caselaw stringently construing 'excusable neglect'" in a comparable Federal Rules provision); *see also Robb v. Norfolk and W.Ry. Co.,* 122 F.3d 354, 361-62 (7th Cir. 1997) ("excusable neglect" has a new and broader meaning following *Pioneer*).

The Commission's misinterpretation of *Pioneer* has been rejected before in circumstances not unlike those before us. In *George Harms Constr. Co., Inc. v. Chao,* 371 F.3d 156 (3d Cir. 2004), the court vacated a final order of the Commission that refused to grant Rule 60(b)(1) relief to an employer whose internal mail delivery failed, as here, causing the company to delay contesting a citation for well over a month after its filing was due. The Third Circuit rejected the Commission's weighing of the "control" factor at the expense of the other equitable factors identified in *Pioneer*. The court's explanation is fully applicable in this case:

> [9] The ALJ's "excusable neglect" calculus was improper. Under *Pioneer*, a court must take into account all relevant circumstances surrounding a party's failure to file, and failing to disprove "reasonable control" is not necessarily fatal to a petitioner's request for relief. To state it differently, the "control" factor does not necessarily trump all other relevant factors. As the Supreme Court concluded in *Pioneer*: "[T]he lack of any prejudice to the [opposing party] or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy

claim." 507 U.S. at 398, 113 S. Ct. 1489. As the Commission has recognized, in Fed.R.Civ.P. 60(b)(1) late filing cases, it is usually a given that there is "a lack of prejudice to the Secretary or to the interests of efficient judicial administration, combined with a lack of bad faith by the employer." *CalHar Constr. Inc.*, No. 98-0367, 2000 OSAHRC LEXIS 28, *6 n. 5. But just because those factors may nearly always favor the petitioner does not mean that the Commission should ignore them.

*Harms*, 371 F.3d at 164.

Notably, the court completed its analysis by finding that the employer's explanation for its mishandling of the citation in this single instance was "an unforeseeable human error beyond its reasonable control." *Id.* at 165. Consequently, on balance the equitable factors, taken as a whole, supported the grant of excusable neglect relief for the employer. The court vacated and remanded for a hearing on the merits. The court issued similar relief in another case in which, due to an employee's losing or destroying mail, an employer did not respond to OSHA citations until about two months after the deadline. *Avon Contractors, Inc. v. Sec. of Labor,* 372 F.3d 171, 172 (3rd Cir. 2004). The Commission had nonetheless rejected a Rule 60(b)(1) motion based on its artificially narrow interpretation of *Pioneer.*[2] We find the Third Circuit's reasoning persuasive.

Examining the totality of circumstances under Rule 60(b)(1), *Pioneer*'s interpretation of excusable neglect*,* and this court's authorities, we are compelled to find the Commission's decision arbitrary and capricious and not

---

[2] A recent unpublished decision of the D.C. Circuit denied a petition for review of an untimeliness decision of the Commission premised on an employer's failure to explain why the OSHA citation was not forwarded to company headquarters. *David E. Harvey Builders, Inc. v. Sec. of Labor,* 724 F.App'x 7, 10 (D.C.Cir. 2018). Notably, however, although unpublished opinions of that court issued after January 1, 2002 "may be cited as precedent," "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition." U.S.Ct. of App. D.C. Cir. Rules 32.1(b)(1)(B), 36(e)(2).

in accord with law.  Coleman admits neglect, but its proof shows that the missed deadline was attributable to a single instance of unforeseen human error.  Contrary to the Commission's finding of inadequate procedures, the company showed that all mail is ordinarily received, opened and distributed by the office manager or the company controller.  Far from being inadequate, the procedures enabled the company to handle seven previous OSHA citations and in at least three instances, to contest them by informal means within the statutory time limit.  This track record demonstrates the company's usual procedures were sufficient to respond to OSHA matters.  In this single deviation from the procedures, however, the OSHA citations here were not received or opened by the usual employees.  That the project supervisor did not see the citations on his desk until after the deadline and after his return from out of town was also not shown to be a common occurrence, indeed it was apparently unique.  The circumstances prove neglect of a very minor sort that had minimal consequences in the context of the excusable neglect inquiry.

With regard to the other equitable factors, the company responded to the citations as soon as the project superintendent saw them, which was within 18 business days of the response deadline.  The delay evinces no lack of good faith, nor is there the least showing of prejudice to the agency or its mission.  Judicial proceedings to contest the citations were not prejudiced, as the Commission acknowledged.  Not only does a majority of the non-exclusive *Pioneer* factors favor granting relief to Coleman, but the qualitative assessment of relevant factors is even more persuasive.  The Commission's improperly narrow focus on the company's "control" and "inadequate" mail handling procedures led it to ignore that a nearly $70,000 penalty had been assessed—on a company that it *admits* has  meritorious defenses.  As a small company, Coleman asserts this penalty would pose a financial hardship.  Further, because one of the citations

was classified as a "willful" violation, its affirmance would significantly prejudice Coleman's bonding capacity, insurance, bidding, and reputation.

For all these reasons, the equities weigh in favor of Coleman's having an opportunity to assert its defenses in OSHA's administrative proceedings. The Commission's contrary determination denying relief from the untimely filing was legally in error and thus an abuse of discretion.

## IV. CONCLUSION

Because the Commission abused its discretion when it ruled that Coleman's untimely response was caused by inexcusable neglect, that decision is **VACATED**, and the case is **REMANDED** for a hearing on the merits of the OSHA violations.

No. 18-60559

EDITH H. JONES, Circuit Judge, concurring:

Although I authored the opinion here reversing the Occupational Safety and Health Review Commission's decision to reject the petitioner's late-filed response to a citation notice, I believe a further explanation of that result is warranted. The Occupational Safety and Health Act provides that the "Commission is authorized to make such rules as are necessary for the orderly transaction of its proceedings. Unless the Commission has adopted a different rule, its proceedings shall be in accordance with the Federal Rules of Civil Procedure." 29 U.S.C. § 661(g). Federal Rule Civ. Proc. 60(b) statutorily governs this case because the Commission has not determined otherwise. Whether because of its incorporation by statute into OSHRC matters, or simply because the Rule itself is part of the Federal Rules that pertain to federal civil litigation, Rule 60(b)(1) should be interpreted by courts de novo and without deference to the Commission's unusual and unforgiving approach to the *Pioneer* decision. Thus, our opinion relies on the Third Circuit's decisions in cases like *George H. Harms* and *Avon Contractors* by reviewing the totality of circumstances and finds the Commission's decision arbitrary and capricious.

The deeper reason for our overruling the Commission lies in its failure to conform its approach to *Pioneer* with the default judgment case law prevalent under Rule 60(b)(1). By prioritizing the regulated party's reason for delay, a single factor in the multifactored *Pioneer* analysis, the Commission ignored a large body of case law that has examined civil default judgments under the "excusable neglect" standard. The Commission should have harmonized its approach with those analogous cases. In particular, this court has long held that default judgments are "generally disfavored in the law." *Mason & Hanger-Silas Mason Co., Inc. v. Metal Trades Council,* 726 F.2d 166, 168 (5th Cir. 1984). Moreover, "[b]ecause of the seriousness of a default judgment,…even a slight abuse of discretion may justify reversal." *CJC*

10

*Holdings, Inc. v. Wright & Lato, Inc.,* 979 F.2d 60, 63 n.1 (5th Cir. 1992)(internal quotation marks, brackets, and citation omitted).  Indeed, the equities "militate strongly in favor of relief" from a default judgment unless "no injustice was done by the judgment."  *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 403 (5th Cir. 1981).

Consistent with *Pioneer,* this court considers several factors when a party seeks relief from a default judgment, including:  (1) whether the default was willful; (2) whether setting aside the default would prejudice the opposing party; and (3) whether the party seeking relief presents a meritorious defense. *Lacy v. Sitel Corp.,* 227 F.3d 290, 292 (5th Cir. 2000).  "A finding of willful default ends the inquiry, for when the court finds an intentional failure of responsive pleadings there need be no other finding."  *Id.* (internal quotation marks omitted).  As noted, however, there is no evidence—and the Commission does not allege—that Coleman's failure to respond was willful.  Furthermore, the Commission's decision noted "no evidence" that Coleman's untimely response prejudiced the government.   And importantly, the Secretary stipulated that Coleman has a meritorious defense to the citations.  This court has emphasized the importance of a defendant's assertion of a meritorious defense in the calculus of comparative prejudice that informs the grant of Rule 60(b)(1) relief.  *See Jenkens & Gilchrist v. Groia & Co.,* 542 F.3d 114, 120-21 (5th Cir. 2008); *Lacy,* 227 F.3d at 293-94.

The Commission argues that caselaw authority governing relief from default judgments under the Rule is not relevant, because unlike civil litigation to which no presumption of liability attaches, OSHA citations are an enforcement mechanism for alleged workplace safety deficiencies.  There are several easy rejoinders to this contention.  Preliminarily, OSHA no doubt has emergency remedies available to address immediate workplace safety hazards, but this case and others cited in briefing involve only monetary fines or

penalties; such enforcement actions are no different than any ordinary agency enforcement cases. Second, the Supreme Court has construed the Rule in *Pioneer,* and the Court's explanation of "excusable neglect" is definitive as a matter of law. An equitable calculus governs the ultimate decision, and "neglect" or "control" are not more probative than other factors. Third, this court's decisions explain why default judgments ought to be vacated under the Rule when, in the absence of willful conduct or prejudice to the plaintiff, and where a meritorious defense is asserted, the consequences may be demonstrably unjust. In this case, all three factors favor the employer; it is hard to fathom why the Commission's erroneous imposition of fines and penalties would be less unjust than an erroneous default judgment. And because the company's meritorious defense was conceded, the Secretary's expressed concern about prompt remediation of workplace safety problems rings hollow. Finally, if the Secretary chooses to institute rulemaking to depart from Rule 60(b)(1) as interpreted by the Supreme Court and this court, it is free to do so.

The Commission, in my view, misapplied *Pioneer* and Rule 60(b) not only by placing undue emphasis on one factor out of a set of non-exclusive factors, but also by failing to follow long-established case law concerning the equities due to defendants in default judgment situations.

12